UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN VESELY,<br><br> *Plaintiff*,<br><br>v.<br><br>ILLINOIS SCHOOL DISTRICT 45 and SUSAN HARDEK-VESELY<br> *Defendant*. | No. 22 CV 2035<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Bryan Vesely ("Bryan") brings suit against Susan Hardek-Vesely ("Susan"), his ex-wife and co-parent of their 12-year-old child, A.V., and Illinois School District 45 ("District") for allegedly violating his parental rights under the Fourteenth Amendment of the United States Constitution and Article I of the Illinois Constitution.[1] Bryan alleges that Susan and the District conspired to violate his parental rights by facilitating A.V.'s gender transition at school. The District and Susan have filed motions to dismiss Bryan's claims under Federal Rule of Civil Procedure 12(b)(6). [Dkts. 23, 24.] For the following reasons, both motions [Dkts. 23, 24] are granted. Bryan's federal substantive Due Process claim is dismissed for failure to state a claim. Bryan's state law claims are dismissed because Bryan has not stated a viable federal claim to support the Court's exercise of supplemental

---

[1]  The Court refers to the individual Plaintiffs by their first names to avoid confusion.

jurisdiction over his state law claims.[2] This dismissal is without prejudice. Bryan is given until May 2, 2023 to file an amended complaint, if he believes he can do so consistent with this opinion and Rule 11.[3] If no amended pleading is filed by that date, the dismissal will convert to a dismissal with prejudice.

I. Background

The following facts are taken from the governing complaint [Dkt. 1]. All well-pleaded factual allegations are assumed to be true for purposes of Defendants' motions to dismiss. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808-809 (7th Cir. 2016). Bryan and Susan are the divorced parents of 12-year-old A.V. [Dkt. 1, ¶¶ 2, 4, 34.] They were granted joint parental decision-making authority by court order. [*Id.* ¶ 3.][4] Susan

---

[2] *Walker v. McArdle*, 861 Fed. Appx. 680, 687 (7th Cir. 2021) ("we presume that a district court will relinquish jurisdiction over supplemental state-law claims when no federal claims remain in advance of a trial").

[3] See Fed. R. Civ. P. 11; *Circle Block Partners, LLC v. Fireman's Fund. Ins. Co.*, 44 F.4th 1014, 1023 (7th Cir. 2022) (ordinarily a plaintiff whose complaint is dismissed under Rule 12(b)(6) should be given at least one opportunity to amend before the action is dismissed with prejudice).

[4] Susan disputes this allegation. She asserts based on the Parenting Agreement and Allocation Judgment ("Agreement") entered by the DuPage County, Illinois Circuit Court, that Bryan has waived parental decision-making authority over A.V.'s gender transition. [See Dkt. 23 at 9-10, 12.] The Court can take judicial notice of the Agreement. Fed. R. Evid. 201; see also *Crowley v. McKinney*, 400 F.3d 965, 967 (7th Cir. 2005) (taking judicial notice of divorce decree); *Daw v. Consol. City of Indianapolis & Marion Cnty.*, 734 F. App'x 357, 358 (7th Cir. 2018). However, the proper interpretation of the Agreement is disputed. Bryan asserts that he did not waive his rights under the Agreement because A.V.'s transition falls under the "education" and "health" categories for which he has joint decision-making authority. [See Dkt. 28 at 23.] The District maintains that Bryan's argument requires the Court to assess if the Agreement gives Bryan decision-making authority concerning A.V.'s transition, and requests that if Bryan's claims are not dismissed, they be removed to state court under the "domestic relations exception" to federal court jurisdiction. [See Dkt. 30 at 3 (citing *Marshall v. Marshall*, 547 U.S. 293, 296 (2006)).] The Court finds it unnecessary to resolve this dispute because, taking Bryan's allegations concerning his parental authority as true, he fails to state a viable federal claim. The Court nonetheless notes that any modification, interpretation, or enforcement of the Agreement must be left to the state court.

resides in Illinois, and Bryan in Florida. [*Id.* ¶¶ 5–6.] A.V. attends a middle school in the District in Illinois. [*Id.* ¶¶ 4, 7.] A.V.'s assigned sex at birth was male. [*Id.* ¶ 34.] At some point, A.V. expressed to her parents and the District's staff a preference for a feminine name, female pronouns, and wearing make-up, nail polish, and feminine clothing at school. [*Id.* ¶¶ 35–36.][5]

Bryan alleges upon information and belief that the District has a policy of allowing its students to "socially transition to a different gender identity at school." [Dkt. 1, ¶ 33.] Under this policy, the District's staff refers to A.V. by her preferred pronouns and name and allows A.V. to wear make-up, nail polish, and feminine clothing. [*Id.* ¶ 39.] Bryan objects to A.V.'s transition, but Susan approves. [*Id.* ¶¶ 37–38.]

Bryan brings this lawsuit against both the District and Susan over the policy to affirm A.V.'s gender transition at school without Bryan's consent and over his objection. [Dkt. 1, ¶¶ 38, 40–42.] Bryan alleges that the policy violates his parental rights under both the Fourteenth Amendment to the United States Constitution and the Illinois Constitution [*id.* ¶ 56], and that the District and Susan conspired to violate his parental rights [*id.* ¶ 59]. He seeks declaratory relief, damages, and to enjoin the District "from allowing or requiring staff to refer to students by a name or

---

See *Marshall*, 547 U.S. at 308 (divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds).

[5]     Bryan refers to A.V. as "he" and "his" in his complaint and briefs, while Defendants use feminine pronouns "she" and "her." In this opinion, the Court will identify A.V. as a transgender girl and use female pronouns when referring to her, which appears to be consistent with A.V.'s gender identity and the way she refers to herself. See *Students v. United States Dep't of Ed.*, 2016 WL 6134121, at *2 (N.D .Ill. Oct. 18, 2016).

pronouns at odds with their biological sex, while at school, without parental consent[.]" [*Id.* ¶¶ 56, 61.] Currently before the Court are Defendants' motions to dismiss the complaint for failure to state a claim.

## II. Legal Standard

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

Bryan brings suit against the District for allegedly violating his parental rights under the Fourteenth Amendment to the United States Constitution and Article I of the Illinois Constitution. He also brings suit against the District and Susan for allegedly conspiring to violate his federal and state constitutional rights. For purposes of Defendants' motions to dismiss, all of Bryan's claims are contingent on his ability to plead a viable Fourteenth Amendment claim against the District: the conspiracy claims are premised on an underlying constitutional violation, and the

4

state law claims are before the Court based solely on supplemental jurisdiction. See *supra* n.2.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This right "guarantees more than fair process"; it also "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). The "touchstone of due process … is 'protection of the individual against arbitrary government action.'" *Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002) (quoting *Dunn v. Fairfield Community High School Dist. No. 225*, 158 F.3d 962 (7th Cir. 1998)).

The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tx.*, 503 U.S. 115, 125 (1992). This is reflected in its "established method of substantive-due-process analysis," which "has two primary features." *Glucksberg*, 521 U.S. at 720. First, it recognizes that "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed." " *Id.* at 720-21 (internal quotation marks and citations omitted). Second, it requires "a 'careful description' of the

5

asserted fundamental liberty interest." *Id.* at 721; see also *Collins*, 503 U.S. at 125 (since the "doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field," it is "important … to focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the [defendant] allegedly did to deprive her husband of that right"). Thus, for example, when the *Glucksberg* Court considered a Washington statute prohibiting "aid[ing] another person to attempt suicide," it defined the interest at stake narrowly as "a right to commit suicide which itself includes a right to assistance in doing so"—rather than as "the right to die," "a liberty to choose how to die, or "the liberty to shape death," as the Ninth Circuit had erroneously done. 521 U.S. at 703.

If the asserted liberty interest truly is "fundamental," then "the Fourteenth Amendment 'forbids the government to infringe … *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)) (emphasis in *Glucksberg*). If the plaintiff fails to establish the threshold requirement that the challenged state action implicates a fundamental right, then only "a reasonable relation to a legitimate state interest to justify the action" is required to pass constitutional muster. *Id.* at 722; see also *Lukaszczyk v. Cook County*, 47 F.4th 587, 599-600 (7th Cir. 2022) ("Under this framework, we consider whether the plaintiffs assert a fundamental right or liberty. If so, we must apply heightened scrutiny. If not, we review the claim for a rational basis."); *Hayden ex rel. A.H. v.*

6

*Greensburg Community School Corp.*, 743 F.3d 569, 576 (7th Cir. 2014) ("Where a non-fundamental liberty—sometimes described as a 'harmless liberty'—is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest." (quoting *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990)).

Turning to the particular right at issue in this case, the Supreme Court has long recognized a "fundamental right of parents to make decisions concerning the care, custody and control of their children." *Troxel,* 530 U.S. at 66. This fundamental right originated in *Meyer v. Nebraska,* 262 U.S. 390 (1923), which struck down a statute prohibiting the teaching of subjects in any school, public or private, in any language other than English, as an arbitrary interference with parents' right to control the education of their children. It was also the basis for *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35 (1925), which struck down a statute requiring all children between the ages of 8 and 16 years of age to attend public school on the basis that it "unreasonably interfere[d] with the liberty of parents and guardians to direct the upbringing and education of children under their control."

Bryan, relying on *Meyer* and *Pierce*, argues that the District's policy "to allow, facilitate, and 'affirm' a minor student's request to transition to a different gender identity at school," without Bryan's consent and over Bryan's objection, violates his fundamental right to direct the education and upbringing of his child. [Dkt. 28 at 2.]; see also *id*. at 6-9 (referring repeatedly to the right "to direct the education and upbringing of one's children"). Therefore, Bryan maintains, the District's policy is

7

subject to strict scrutiny. The District responds that Bryan does not have a constitutional right to "dictate A.V.'s at-school social treatment on account of a constitutional parental right superior to any rights and interest of the other parent, the student child, and the school district." [Dkt. 11 at 4; Dkt. 24 at 4.]. Susan adopts these arguments. [See Dkt. 23 at 7.] According to the District, its policy is subject only to rational basis review, which it easily satisfies.

Upon review of the parties' briefs and the relevant case law, the Court concludes that Bryan fails to state a plausible substantive Due Process claim for violation of his parental rights. The parental rights cases on which Bryan relies, *Meyer* and *Pierce*, are "remote from the present case." *Crowley*, 400 F.3d at 968. In describing the rights established in *Meyer* and *Pierce*, the Supreme Court in *Runyon v. McCrary*, 427 U.S. 160 (1976), stated that the former protected "the subject matter ... taught at ... private school," and that the latter established a parental right to "send ... children to a particular private school rather than a public school." 427 U.S. at 177. Likewise, according to the Seventh Circuit, *Meyer* and *Pierce* "are about a state's right to deny, in effect, the option of private education"—"a denial that is a greater intrusion on parental control of their children than limiting parents' involvement in the activities of the public school that their children attend," as the plaintiff-father alleged in *Crowley*, 400 F.3d 965, 968 (7th Cir. 2005).

The *Crowley* court highlighted that *Meyer* and *Pierce* involved the "rights of parents acting together rather than the rights retained by a divorced parent whose ex-spouse has sole custody of the children and has not joined in the noncustodial

parent's claim." 400 F.3d at 968–69. The court went on to reason that a parental rights claim is weaker where the alleged intrusion by a school district challenged "only one parent's control, with the other's remaining unimpaired." *Id*. at 969. *Crowley* elaborated that the "only federal constitutional right vis-à-vis the education of one's child that the cases as yet recognize" is "the right to choose the school and if it is a private school to have a choice among different types of school with different curricula, educational philosophies, and sponsorship." *Id*. at 971. "*It is not a right to participate in the school's management—a right inconsistent with preserving the autonomy of educational institutions, which is itself … an interest of constitutional dignity.*" *Id*. (emphasis added). The *Crowley* court therefore concluded that it "greatly doubt[ed] that a noncustodial divorced parent has a federal constitutional right to participate in his children's education at the level of detail claimed by the plaintiff," who complained that he was denied all access to school records, not told if his son was sick from school, and not allowed to be a playground monitor or go to the school bookfair. See *id*. at 967, 971. Since the "existence of the right that Crowley assert[ed] [was] not established law," the school principal was entitled to qualified immunity.

*Crowley* is consistent with *Thomas v. Evansville-Vanderburgh School Corp.*, 258 Fed. Appx. 50, 53–54 (7th Cir. 2007) (nonprecedential order), which likewise recognized that "[a] right to choose the type of school one's child attends, or to direct the *private* instruction of one's child, does not imply a parent's right to control every aspect of her child's education at a public school." *Thomas* cites approvingly to decisions from other circuits rejecting challenges to school curricula and policies,

9

including *Leebaert v. Harrington*, 332 F.3d 134, 140-42 (2d Cir. 2003), and *Fields v. Palmdale School Dist.*, 427 F.3d 1197 (9th Cir. 2005). The Second Circuit in *Leebaert* held that the scope of the fundamental parental right to direct the education of children did not include a right to exempt one's child from public schools' mandatory health curriculum. It concluded that "*Meyer*, *Pierce*, and their progeny do not begin to suggest the existence of a fundamental right of every parent to tell a public school what his or her child will and will not be taught." *Leebaert*, 332 F.3d at 142.

In *Fields*, the Ninth Circuit considered a substantive Due Process challenge to a school district's decision to distribute to elementary school students a survey containing questions about sex. The court held that "[n]either *Meyer* nor *Pierce* provides support for the view that parents have a right to prevent a school from providing any kind of information—sexual or otherwise—to its students." *Fields*, 427 F.3d 1197, 1206 (7th Cir. 2005). While the court acknowledged that "parents are legitimately concerned about the subject of sexuality," it found that there was "no constitutional reason to distinguish that concern from any of the countless moral, religious, or philosophical objections that parents might have to other decisions of the School District." *Id.* The court reasoned that "[s]chools cannot be expected to accommodate the personal, moral or religious concerns of every parent" because "[s]uch an obligation would not only contravene the educational mission of the public schools, but also would be impossible to satisfy." *Id.*; see also *Blau v. Fort Thomas Public School Dist.*, 401 F.3d 381, 393-95 (6th Cir. 2005) (parents "do not have a fundamental right generally to direct *how* a public school teaches their child";

10

"[w]hether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school," or a dress code, "these issues of public education are generally 'committed to the control of state and local authorities'").

*Crowley* expressed a similar concern with the impossibility of a school accommodating the conflicting desires of divorced parents. The court cautioned that if the father's substantive due process claim were allowed to go forward, school districts would be forced to act as umpires in domestic disputes and "be dragged into fights between divorced parents over their children." *Crowley*, 400 F.3d at 970. It also recognized that interfering with a school district's policy, where parents have conflicting preferences, would "interfere with the educational mission not only by increasing schools' legal fees but also and more ominously by making school administrators and teachers timid because they would be fearful of being entangled in suits by wrathful parents rebuffed in their efforts to superintend their children's education." *Id.* at 969.

This case aptly illustrates the impossibility of the District fulfilling its educational mission while simultaneously accommodating the concerns of every parent. Bryan and Susan's preferences clash on the District's treatment of A.V.'s gender expression and affirmation of A.V.'s gender identity. Bryan objects to the District's policy; Susan approves. [Dkt. 1, ¶ 38]. Refusing to affirm A.V.'s gender identity goes against Susan's wishes, but affirming A.V.'s gender identity goes

11

against Bryan's wishes. The District cannot accommodate *both* parents' demands. See *Parents for Privacy v. Barr*, 949 F.3d 1210, 1233 (9th Cir. 2020) (affirming dismissal of parental rights challenge to transgender bathroom policy on the basis that "accommodating the different 'personal, moral, or religious concerns of every parent' would be 'impossible' for public schools, because different parents would often likely prefer opposite and contradictory outcomes.") (quoting *Fields*, 427 F.3d at 1206); *cf. Leebaert*, 332 F.3d at 141 ("recognition of such a fundamental right—requiring a public school to establish that a course of instruction objected to by a parent was narrowly tailored to meet a compelling state interest before the school could employ it with respect to the parent's child—would make it difficult or impossible for any public school authority to administer school curricula responsive to the overall educational needs of the community and its children").

Under these facts, the Court concludes that Bryan fails to plausibly allege that the District's policy amounted to a direct and substantial interference with a *fundamental* parental right as is required for strict scrutiny to apply. See *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1009–10 (7th Cir. 2019). Therefore, rational basis review applies. *Evans v. City of Chicago*, 873 F.2d 1007, 1015 (7th Cir. 1989); *John & Jan Parents 1 v. Montgomery County Bd. of Ed.*, -- F. Supp. 3d --, 2022 WL 3544256, at *13 (D. Md. Aug. 18, 2022) (rational basis review applied to parents' due process claim alleging that public school's guidelines for student gender identity violated their right to direct their children's educations).

12

The District's policy easily clears this hurdle, which requires only "a reasonable relation to a legitimate state interest to justify the action." *Glucksberg*, 521 U.S. at 722. The District asserts that its policy relates to its legitimate interest in maintaining a non-discriminatory environment for students and protecting students' privacy, mental well-being, and physical safety. The Court agrees that this is a legitimate interest: "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *New York v. Ferber*, 458 U.S. 747, 756–57 (1982) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)).

The Court also agrees with the District that there is a "reasonable relation" between its legitimate interest and its challenged policy. It is Bryan "who must demonstrate that the [District's] policy lacks a rational relationship with a legitimate government interest; it is not the school district's obligation to prove rationality with evidence." *Hayden ex rel. A.H. v. Greensburg Community School Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). But instead, Bryan's complaint acknowledges the relation between the District's policy and the District's legitimate interest in protecting transgender students. He alleges that "[m]ental health professionals disagree about the proper approach when a child experiences gender dysphoria," and recognizes that some "medical and psychiatric professionals believe that the best response is to 'affirm' a child's perceived gender identity and to support a social transition to that identity." [Dkt. 1 at 4.] By recognizing that the District's policy of affirming transgender students is consistent with the advice of at least some medical and

13

psychiatric professionals, the complaint itself pleads a "conceivable state of facts that supports the policy," and therefore the policy "passes muster under the due process clause." *Hayden*, 743 F.3d at 576 (public school policy on hair length for boys playing interscholastic basketball satisfied rational basis test for substantive due process claim); see also *Parents for Priv.*, 949 F.3d at 1238 (school policy allowing transgender students to use bathrooms and locker rooms matching their gender identities is "rationally related to the legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status"). For these reasons, Bryan fails to plausibly allege that the District has violated his federal substantive due process rights.

Bryan's other claims must be dismissed, as well. The conspiracy claim against the District and Susan must be dismissed to the extent that it is contingent on an underlying violation of Bryan's substantive due process rights. [See Dkt. 1, ¶ 59]; see also *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). And absent a viable federal claim, Bryan's state law claims are properly dismissed due to lack of supplemental jurisdiction. See *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) ("when the federal claims are dismissed before trial, there is a presumption that the court will relinquish jurisdiction over any remaining state law claims"). This presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed.

14

Given this resolution of the parties' motions to dismiss, the Court finds it unnecessary to resolve any other arguments raised by the briefs.

## IV. Conclusion

For these reasons, Susan Vesely's motion to dismiss [Dkt. 23] and the District's motion to dismiss [Dkt. 24] are both granted. Bryan Vesely's federal claims are dismissed for failure to state a claim. His state law claims are dismissed because he has not stated a viable federal claim to support the Court's exercise of supplemental jurisdiction over his state law claims. This dismissal is without prejudice. Bryan Vesely is given until May 2, 2023 to file an amended complaint, if he believes he can do so consistent with this opinion and Rule 11. If no amended pleading is filed by that date, the dismissal will convert to a dismissal with prejudice.

Enter: 22-cv-1874
Date: April 18, 2023

_____
Lindsay C. Jenkins
United States District Judge

15